## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## (ATLANTA DIVISON)

| | |
|---|---|
| JANE DOE K.D.<br><br>    Plaintiff,<br><br>vs.<br><br>ATLANTA DREAM CENTER.<br>CHURCH INC.; ATLANTA<br>DREAM CENTER. CHURCH<br>INC. d/b/a ATLANTA SCHOOL<br>OF MINISTRY; ATLANTA<br>DREAM CENTER, INC. a/k/a<br>FRONTLINE RESPONSE<br>INTERNATIONAL, INC.;<br>ASSEMBLIES OF GOD;<br>GEORGIA DISTRICT COUNCIL<br>ASSEMBLIES OF GOD, INC.;<br>MC FOUNDATION, INC., d/b/a<br>MISSION MOVEMENT CORPS.;<br>and JOHN DOES 1-50;<br>,<br><br>    Defendants. | Civil Action File No.<br>1:25-cv-02028-AT |

## DEFENDANT GEORGIA DISTRICT COUNCIL ASSEMBLIES OF GOD, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, Defendant, GEORGIA DISTRICT COUNCIL

ASSEMBLIES OF GOD, INC. ("GDCAG"), as a named defendant by and through

its undersigned counsel, and hereby respectfully request the Court dismiss Plaintiff's

Complaint as it relates to Defendant Georgia District Assemblies of God, Inc.

## **TABLE OF CONTENTS**

I. STATEMENT OF FACTS………………………………………………..1

II. BACKGROUND …………………………………………………………4

III. STANDARD OF REVIEW …………………………………………....6

IV. ARGUMENT AND CITATION OF AUTHORITY ………………….…7

    A. Plaintiff cannot recover against GDCAD on her four TVPRA claims as Counts 1 – 4 do not plausibly allege labor trafficking beneficiary claims...………………………………………………………....7

        1. "Knowing Benefits" ………………………………………………8

        2. Participation in a Venture …………………………………………..10

        3. Constructive or Actual Knowledge ………………………………12

    B. Plaintiff's claims brought under the TVPRA are not timely under 18 U.S.C. § 1595 (a) …………………………………………………14

    C. Plaintiff's vicarious liability claim fails where the underlying acts were not performed by an employee or agent nor conducted within the course and scope of the individual's employment…………………………...15

    D. Plaintiff's breach of fiduciary duty claim fails where Plaintiff does not adequately plead the existence of a fiduciary relationship between herself and GDCAD……………………………………………………18

V. CONCLUSION …..………………………………………………....…19

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alford v. United States*,
    116 F.3d 334, 338-339 (8th Cir. Ct. App. 1997) ……………………………17

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283, 1290 (11th Cir. 2010) …………………………………..6, 7

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ………………………………….................6, 7

*Bedsole v. Action Outdoor Advert. JV, LLC*,
    325 Ga. App. 194 (Ga. Ct. App. 2013) …………………………………18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007)……………………………………………….6

*Che v. First Assembly of God*,
    185 So. 3d 125, 134 (2nd Cir. Ct. App. 2016) ………………………………17

*Davis v. Coca-Cola Bottling Co.*,
    516 F.3d 955, 979 (11th Cir. 2008) ……………………………………….7

*Doe v. G6 Hosp., LLC*,
    2023 U.S. Dist. LEXIS 222360, *15 (N.D. Ga. 2023)………………………10

*Doe v. McCoy*,
    2024 U.S. Dist. LEXIS 33901, *21 (N.D. Ga. 2024) …………………18, 19

*Doe v. Rjveer LLC*,
    2025 U.S. Dist. LEXIS 54983, *20 (A.L. M.D. 2025) ……………………13

*Doe #1 v. Red Roof Inns, Inc.*,
    21 F.4th 714, 726 (11th Cir. 2021) ………………………………8, 10, 11, 12

*Geiss v. Weinstein Co. Holding LLC*,
    383 F. Supp. 3d 156, 169 (S.D.N.Y 2019) …………………………………8

*K.H. v. Riti, Inc.*,
    2024 U.S. App. LEXIS 3127, *6 (11th Cir. Ct. App. 2024) …………8, 10, 12

*King v. King*,
    316 Ga. 354, 888 S.E.2d 166 (Ga. 2023) …………………………………18

*La Grasta v. First Union Sec., Inc.*,
    358 F.3d 840, 845 (11th Cir. 2004)………………………………………14

*Lucas v. Hospital Auth. Of Dougherty County*,
    193 Ga. App. 595, 598 (Ga. Ct. App. 1989) ………………………………16

*Marshall Cnty. Bd. Of Educ. v. Marshall Cnty. Gas Dist.*,
    992 F.2d 1171, 1174 (11th Cr. 1993) ……………………………………6

*Meyer v. Holley*,
    537 U.S. 280, 285 (2003) ………………………………………………..16

*Omar v. Lindsey*,
    334 F.3d 1246, 1251 (11th Cir. 2003) ……………………………………15

*Piedmont Hosp., Inc. v. Palladino*,
    276 Ga. 612, 613 (2003) …………………………………………………16

*Weiland v. Palm Beach Cty. Sherriff's Office*,
    792 F.3d 1313, 1321-23 (11th Cir. 2015) ………………………………7

**Statutes**

O.C.G.A. § 51-2-2 ………………………………………………………15, 16

18 U.S.C. § 1581 …………………………………………………………..8

18 U.S.C. § 1584 …………………………………………………………..8

18 U.S.C. § 1589 …………………………………………………………..8

18 U.S.C. § 1590 …………………………………………………………..8

18 U.S.C. §1595 …….……………………………………………………7, 8, 10, 14

**Other Authorities**

Adams, <u>Georgia Law of Tort</u>
    p. 263, § 7 – 2 (2002 ed.) ……………………………………………...16

Black's Law Dictionary (11th ed. 2019)……………………………………12

Fed. R. Civ. P. 12 (b)(6) ……………………………………………….6

# I.   STATEMENT OF FACTS

This action arises out of the alleged trafficking of Plaintiff Jane Doe, K.D. by certain defendants, any benefits of which are claimed to have been enjoyed by all defendants. *See generally* Dkt. 20. She filed this suit initially on April 14, 2025 (Dkt. 1) and amended her Complaint on April 21, 2025, (Dkt. 20) alleging eight causes of action: four claims of Beneficiary Liability under 18 U.S.C. §1595 (a) of the Trafficking Victims Protection Reauthorization Act (TVPRA) (Count 1- 4) against all Defendants; Negligence (Count 5) against Atlanta Dream Center Church, Inc. d/b/a Atlanta School of Ministry, and Atlanta Dream Center, Inc., a/k/a Frontline Response International, Inc. (ADC Defendants); Breach of Fiduciary Duty (Count 6) against ADC Defendants; Vicarious Liability (Count 7) against all Defendants; and Breach of Fiduciary Duty (Count 8) against all Defendants.

Plaintiff was recruited in Missouri by the Atlanta School of Ministry (ASOM) travel team in between 2012 and 2013. *Id*. at ¶ 16. The program was presented to Plaintiff as an opportunity to join ASOM members in Atlanta, Georgia where she could learn to minister and do missionary work. *Id*. at ¶¶ 16-17. Plaintiff decided to join the ASOM and arrived sometime between 2014 and 2015. *Id*. at ¶ 20. Upon her arrival, Plaintiff was assigned to an apartment in a high-rise apartment complex, which she shared with other roommates. *Id*. at ¶ ¶ 20, 22.

According to Plaintiff, during her time with the ASOM, she was forced to do chores and labor for the Atlanta Dream Center (ADC) under terrible working conditions and often working with spoiled or rotten food. *Id*. at ¶¶ 26-34. As a result of this, Plaintiff alleges that she suffered gastrointestinal issues and malnourishment. *Id*. at 36. Plaintiff further contests she would have been paid an hourly wage of $7.25 to $10.00 for the work she performed for ADC in Georgia during 2014-2015. *Id*. at 38.

Similarly, Plaintiff alleges that ADC forced her to work at "various sporting events, entertainment venues, and other facilities where restaurant entities provided catering and concession services (hereinafter generally referred to as 'trafficking food service events')" throughout 2014-2015. *Id*. at 59. Plaintiff contests she was made to work 12-14 hour shifts, or more, at these trafficking food service events. *Id*. at ¶¶ 63-65. Plaintiff further asserts that the ADC, including Pastor Daniel Palmer, advised her that she had to work at these events in order to payback her tuition. *Id*. at ¶¶ 60-62. Ultimately, Plaintiff explains that she was forced to leave ASOM in the middle of the night between 2014 – 2015. *Id*. at ¶¶ 59, 110.

The Complaint alleges that the GDCAG provides financial support for the ADC including providing a grant for the expansion of an ADC program aimed at aiding sex trafficking victims. *Id*. at ¶¶ 207 – 208. Further, Plaintiff alleges that the Assembly of God (AOG) generally expects credentialed ministers to give specific

portions of their income to the district and national operations in accordance with district policies. *Id*. at ¶¶ 192, 210-211. As such, Plaintiff draws the conclusion that the GDCAD profits from incentivizing ministries to maximize their membership as the additional financial contributions trickle up to the GDCAD. *Id*. at ¶¶ 210 – 216, 243, 257. Plaintiff further extrapolates that the financial assistance provided by the GDCAD indicates an interest in how the ADC funds their activities and thus an interest in the ADC partnering with external entities to provide labor through the ADC's program participants in exchange for financial contributions. *Id*. at ¶¶ 216 – 217, 258 – 259.

Additionally, Plaintiff expresses that Minister Daniel Palmer at the ADC employed psychological and religious coercion to prevent Plaintiff from leaving. *Id*. at ¶¶ 232 – 235. It is also alleged that Minister Palmer was reported a number of times for sexual abuse by other students. *Id*. at ¶¶ 228 – 231. Plaintiff explains that, as a credentialed minister, Minister Palmer was under the direct supervision of the GDCAD. *Id*. at ¶ 236. Thus, Plaintiff claims it was the GDCAD's primary duty to monitor Minister Palmer's church-related activities and business associations as well as receive complaints. *Id*. at ¶ 237. Plaintiff goes on to state that the GDCAD (and AOG) failed to take substantive actions to investigate or curtail Minister Palmer's behavior and exploitative business relationships. *Id*. at ¶¶ 240-241.

Absent from Plaintiff's complaint are any facts supporting any interactions between GDCAD and Plaintiff. The GDCAG is a Georgia non-profit, religious corporation with the primary business of providing guidance on ecclesiastical questions and compliance with church doctrine. GDCAG is not involved in employment decisions of individual churches and does not provide corporate oversight to individual churches.

## II.     BACKGROUND

Plaintiff's Complaint includes several mistakes as to the relationships, authority, and revenue existing among the Defendants. *See* Dkt. 54 at §§ I. – III. (General Council's Brief in support of Motion to Dismiss). Notably, Plaintiff fails to recognize that churches affiliated with the AOG are:

> [S]overeign, autonomous, self-governing, and self-determining bodies which have, by their sovereign, self-determining action in making application for and receiving recognition as a General Council affiliated church, entered into an agreement with the Fellowship to be amenable to the General Council and district council in ***matters of doctrine and polity***.

*See* Dkt. 54 at § II. (citing to General Council's Exhibit 2, Constitution, Art. XI, Sec. 1.c.) (emphasis added). Put simply, the scope of both the General Council and District Council's involvement with individual churches and ministers were and continue to be remote and specific. Further, this autonomy instilled in local churches is a definitive practice of the Assembly of God, as the General Council's

interpretation of the Bible "establishes the status and responsibility of local churches." *Id*. at § II. As such, affiliated churches,

> (1) are separately incorporated; (2) elect their own officers and directors; (3) oversee their own finances and prepare their own financial statements; (4) procure their own insurance; (5) hire, supervise, and compensate their own employees; (6) purchase health insurance; (7) establish their own employment policies; (8) raise their own financial support and pat their own expenses; (9) retain and compensate their own legal counsel; and (10) enter into any/all contracts free of any control by the General Council.

*Id*. (citing General Council's Exhibit 1). Plaintiff's Complaint does not contain any pleadings challenging these assertions with respect to GDCAD.

To the extent Plaintiff without any factual basis or support alleges that "the Georgia District exercises direct oversight over churches and ministers within its geographic territory," the oversight Plaintiff seeks to ascribe to GDCAD is limited to ministerial credentialing and (incorrectly) financial relations between the individual churches and the national organization. *See* Dkt. 20 at ¶¶ 205 – 206. For Plaintiff to allege GDCAD had oversight as to day-to-day activities would be contradictory to the autonomy ascribed by the General Council. *See* Dkt.54  at § II.

While GDCAD asks this Court to consider the facts as correctly outlined by Defendant General Council of the Assemblies of God in its *Brief in Support of Defendant General Council of the Assemblies of God's Motion to Dismiss*, Plaintiff's erroneous Complaint, even taken as true, should be dismissed based on the legal arguments which follow. Dkt. 54

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint meet the pleading standards of Federal Rule of Civil Procedure 8 so as to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Dismissal is appropriate "when, on the basis of a dispositive issue of law, no construction o the factual allegations will support the case of action." *Marshall Cnty. Bd. Of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). The complaint must "state a claim to relief that is plausible on its face," with allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. Thus, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Courts need not accept by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, courts must construct a context-specific inquiry and rely on "judicial experience and common sense" to determine if a plaintiff's "well-pleaded factual allegations… plausibly give rise to an entitlement to relief." *Id*. at 679

In *Iqbal*, "[t]he Court suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679).

## IV.    ARGUMENT AND CITATION OF AUTHORITY

Despite Plaintiff's lengthy and convoluted complaint — *comprised of eighty-four (84) pages, an introduction section, and three hundred and eighty-five (385) paragraphs (several with multiple subparts)* — there are few facts pled that have any relation to Plaintiff's claims against GDCAD. As such, this Court should follow the approach set forth by the Supreme Court in *Iqbal*, by (1) eliminating any allegations in the complaint that are merely legal conclusions; and (2) determine whether the remaining well-pleaded allegations plausibly give rise to relief. *Iqbal*, 556 U.S. at 679; *Am. Dental Ass'n*, 605 F.3d at 1290. Notably, Plaintiff's complaint is characteristic of a shotgun pleading, which is impermissible in the 11th Circuit. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015); *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 (11th Cir. 2008) ("[T]his court has been roundly, repeatedly, and consistently condemning [shotgun pleadings] for years ….").

### A. Plaintiff cannot recover against GDCAD on her four TVPRA claims as Counts 1 – 4 do not plausibly allege labor trafficking beneficiary claims.

The Trafficking Victims Protection Act civil remedy provision provides,

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or **whoever knowingly benefits, or**

**attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter**) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

*See* 18 U.S.C. § 1595 (a) (emphasis added). Plaintiff claims under § 1595 (a) are for violations of §1581 (Count 1), §1584 (Count 2), §1589 (Count 3), and §1590 (Count 4). Counts 1 – 4 allege that GDCAD and other defendants are liable as knowing beneficiaries of a forced labor trafficking venture. The 11th Circuit has explained,

> to state a civil beneficiary claim under the TVPRA, a plaintiff must plausibly allege that the defendant: (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*See K.H. v. Riti, Inc.*, 2024 U.S. App. LEXIS 3127, *6 (11th Cir. Ct. App. 2024); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4[th] 714, 726 (11th Cir. 2021).

### 1. "Knowing Benefits"

To knowingly benefit is more than to merely benefit, as the plain words of the statute necessarily entail an attendant mental status. *Geiss v. Weinstein Co. Holding LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (requiring causal relationship between acts supporting trafficking venture and receipt of a benefit, with actual or constructive knowledge of that causal relationship). Here, the Plaintiff's theory is that GDCAD, through district policies that advise credentialed ministers to give

13

specific portions of their income to the district and national operations and donations from other unspecified entities, received some revenue from ADC Defendants' and contributions from unspecified entities. Dkt. 20 at ¶¶ 210-217, 258 – 259. However, the claim against GDCAD fails because Plaintiff's allegations do not constitute an actual benefit where she fails to acknowledge the "knowing" requirement, and she fails to tie the purported benefits to the labor trafficking venture.

GDCAD received no benefits from the ADC Defendants' it would not receive from any other credentialed ministers. Further, to the extent Plaintiff sweepingly alleges GDCAD received donation from entities involved in trafficking food service events, Plaintiff fails to provide a singular detail as to what contributions were made, when they there made, and by whom they were made. Similar to other nationwide religious organizations, it is not uncommon to receive contributions from corporations or individuals and such contributions could not reasonably be expected to apprise GDCAD of any alleged labor trafficking occurring. In fact, if Plaintiff's allegations are all to be taken as true, then Plaintiff acknowledges that GDCAD is invested in helping victims of trafficking, at a considerable cost to itself rather than facilitating such practices. *Id*. at ¶¶ 207 – 208. As such, there was no knowing benefit, and Plaintiff has failed to adequately allege the first element required to establish her claims under TVPRA.

## 2. Participation in a Venture

The second element to establish a claim under §1595 (a) requires Plaintiff to plausibly allege that GDCAD "took part in a common undertaking or enterprise involving risk and potential profit." *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. Ct. App. 2021). Importantly, "observing something is not the same as participating in it." *Id*. at 227; *see also K.H. v. Riti, Inc.*, 2024 U.S. App. LEXIS 3127, *4 (11th Cir. 2024). In *Doe #1 v. Red Roof Inns, Inc.*, the 11th Circuit Court of Appeals found that allegations that a franchisor received a percentage of the revenue generated by the operation of a hotel alleged to be used for sex trafficking, did not show that the franchisors participated in a common undertaking, nor did allegations that "the franchisor 'owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms' at the hotel." 21 F.4th 714, 725-726 (11th Cir. Ct. App. 2021). The Court explained further that even with plaintiff's allegations that the franchisors investigated these hotels, "read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels … None of these allegations suggest that the franchisors participated in an alleged common undertaking or enterprise with the Doe's sex traffickers or others at the hotel who violated the statute." *Id*. at 227; *see also Doe v. G6 Hosp., LLC*, 2023 U.S. Dist. LEXIS 222360,

*15 (N.D. Ga. 2023) (explaining that §1595(a) does not require the "venture" to be a sex-trafficking venture).

Similar to *Doe #1*, here, Plaintiff fails to script any allegations demonstrating GDCAD participated in a common undertaking or enterprise with Plaintiff's labor traffickers. Instead, Plaintiff mistakenly points to the percentage of credentialed minister's income given to the district, the tenuous oversight of the GDCAD, the investigative authority of the GDCAD, and, oddly, a grant to aid survivors of sex trafficking, as allegations suggestive of GDCAD's participation in labor trafficking. Notably, GDCAD's oversight and investigative authority is *exclusive* to issues of compliance with church doctrine. However, even if this was not the case, as in *Doe #1*, these allegations are likewise insufficient. Where Plaintiff points to a tithe given by credentialed ministers, this Court should consider the Court in *Doe #1*'s rejection of franchisors' fee arrangement as suggestive. Unlike a franchisor asserting corporate and operational oversight over a franchisee, GDCAD's only relation is to credentialed ministers and only in terms of ecclesiastical matters and church doctrine. Where Plaintiff alleges (incorrectly) GDCAD had direct oversight of ADC defendants, this Court should again consider the Court in *Doe #1*'s dismissal of allegations of the franchisors' control over the hotels, its employees, and room rentals. Finally, where Plaintiff declares GDCAD had investigative authority to consider reports of labor trafficking by Plaintiff and others, this Court should turn to

the Court in *Doe #1*'s rebuff of Franchisors' investigations into allegations of sex trafficking as demonstrative of participation in a venture. Any investigative authority of GDCAD is related solely to church doctrine and does not encompass powers equivalent to corporate supervision. As such, "to participate in a venture under § 1595 (a), a defendant must take part in a common undertaking involving risk or profit" which Plaintiff has failed to allege. *Id*. at 227.

### 3. Constructive or Actual Knowledge

For a claim under § 1595 (a), "actual or constructive knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *See K.H. v. Riti, Inc.*, 2024 U.S. App. LEXIS 3127, *6 (11th Cir. Ct. App. 2024); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). "Section §1595 (a) requires that the defendant 'knew or should have known [that the venture] has engaged in an act in violation of this chapter." 21 F.4th 714, 725 (11th Cir. 2021). Knowledge is "an awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *Knowledge*, Black's Law Dictionary (11th ed. 2019). Constructive knowledge "is that knowledge which 'one using reasonable care or diligence should have.'" *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019). As such, Plaintiff must plausibly allege that GDCAD at least constructively knew its alleged venture with ADC Defendants violated the TVPRA **as to Plaintiff**. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714,

725 (11th Cir. 2021); *Doe v. Rajveer LLC*, 2025 U.S. Dist. LEXIS 54983, *20 (A.L.
M.D. 2025).

Here, Plaintiff alleges that she and others reported sexual abuse to Daniel
Palmer, sexual assault to ADC Defendants, and excessive hours of forced, free labor,
and inhumane living conditions to ADC Defendants. Dkt. 20 at ¶¶ 90, 141, 230.
Where Plaintiff specifically pleads that she was a reporter in these instances, it is
apparent the connection between the report and at least constructive knowledge of
the violation of the TVPRA **as to Plaintiff**. However, she fails to allege any instance
where she reported any of the aforementioned to the GDCAD. In fact, Plaintiff
merely offers that "the AOG Defendants received reports of Daniel Palmer's abuse
at ASOM and ADC years before they revoked his ministerial license [in 2021]." *Id.*
at ¶¶ 244, 246. Plaintiff fails to establish when the GDCAD first received any of
these alleged reports and most notably fails to allege she was a part of this reporting.
Given that Plaintiff specifically pleads that she reported certain things to the ADC
and Daniel Palmer, but generalizes the reporting of others, it follows that Plaintiff
does not allege she, herself, ever make a report to GDCAD during her time with
AMOS and ADC.

Plaintiff's failures pull into question how GDCAD's receipt and handling of
*others'* reports at unspecified times, would have led a reasonably diligent GDCAD
to uncover violations of the TVPRA as to herself. Further, while Plaintiff presumes

to include GDCAD and AOG together in AOG Defendants, she simultaneously acknowledges that the AOG "has final authority over the handling of complaints against ministers, including whether to revoke or suspend a minister's credentials following allegations of abuse." *Id*. at ¶ 188. Further, Plaintiff alleges that the AOG "oversees the accreditation of affiliated religious educational institutions and administers domestic and international missionary programs." *Id*. at ¶ 187. Considering this, Plaintiff fails to distinguish whether GDCAD and AOG received all of the same reports, and which entity would be responsible for investigating said reports. As Plaintiff has failed to specifically plead that GDCAD has at least constructive knowledge of the violation of the TVPRA as to this Plaintiff, her claims should be dismissed.

**B. Plaintiff's claims brought under the TVPRA are not timely under 18 U.S.C. § 1595 (a).**

The Trafficking Victims Protection Act civil remedy provision provides that,

> [n]o action may be maintained under subsection (a) unless it is commenced not later than the later of – (1) **10 years after the cause of action arose**; or (2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

*See* 18 U.S.C. 1595(c) (2025) (emphasis added). 11th Circuit Courts have recognized that "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the complaint is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting

*Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)). Here Plaintiff's Complaint was first filed on April 18, 2025 and, in order for her claims to survive the applicable statute of limitations, the cause of action must have not arose before April 18, 2015. Plaintiff has failed to allege that her action was commenced within ten years after the cause of action arose. *See* Dkt. 20, *generally*. Providing specific dates is especially important in a case as complex as this if for no other purpose than to reasonably apprise defendants of pertinent information such that they can diligently investigate these claims and truthfully and accurately respond to them. Plaintiff's allegations concerning the timing of her cause of action are suspiciously vague and unreliable. *See Id*. at ¶ 20 & 38 ("Plaintiff arrived at ASOM in 2014-2015" & "Plaintiff was never compensated … during 2014-2015."). As such, according to the face of the Complaint, Plaintiff has failed to allege facts sufficient for the Court to determine that her claims are not time barred. By Plaintiff's own admission, her claims arose as early as 2014 rendering her claims barred and the Complaint should be dismissed.

**C. Plaintiff's vicarious liability claim fails where the underlying acts were not performed by an employee or agent nor conducted within any conceivable course and scope of the individual's employment.**

The Georgia Code explains that,

> Every person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and *within the*

*scope of his business*, whether the same are committed by negligence
or voluntarily.

*See* O.C.G.A. §51-2-2 (emphasis added). Simply, the theory of vicarious liability makes employers or principals vicariously liable for the acts of their employees or agents in the scope of their employment or authority. *Meyer v. Holley*, 537 U.S. 280, 285 (2003). In order to establish the master as vicariously liable, Plaintiff must show "first the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business." *See Piedmont Hosp., Inc. v. Palladino*, 276 Ga. 612, 613 (2003) (citing to Adams, Georgia Law of Tort, p. 263, §7 – 2 (2002 ed.)). Further, "if a tortious act is committed not in furtherance of the employer's business, 'but rather for *purely personal reasons* disconnected from the authorized business of the master, the master [is] not … liable.'" *Id*. at 613 - 614 (quoting in part *Lucas v. Hospital Auth. of Dougherty County*, 193 Ga. App. 595, 598 (Ga. Ct. App. 1989)). Importantly, "Georgia courts have consistently held that an employer cannot be held liable under respondeat superior for an employee's sexual misconduct when the alleged acts are not taken in furtherance of the employer's business and were outside the scope of employment." *Id*. at 614.

Here, despite the multitude of paragraphs in Plaintiff's Complaint, there are only two which vaguely allege that all Defendants are vicariously responsible for the actions of Daniel Palmer "and other conspirators." Dkt. 20 at ¶¶ 371, 372. Notably, Plaintiff does not plead any fact substantiating an employment nor agency

relationship between the GDCAD and Daniel Palmer or the ADC Defendants. Any annual dues the District Council accepts from ministers for providing ministerial credentialing, does not create an employee or agency relationship between the GDCAD and individual ministers. *See Alford v. United States*, 116 F.3d 334, 338-339 (8th Cir. Ct. App. 1997). As Daniel Palmer was never an agent or employee of GDCAD, GDCAD had no ability to control the activities of Minister Palmer, nor his unidentified, unspecified "other conspirators." Without an ability to exert control over the actions of Minister Palmer, GDCAD had no duty to Plaintiff or other individuals at the church. *See, e.g., Che v. First Assembly of God*, 185 So. 3d 125, 134 (2nd Cir. Ct. App. 2016).

However, to the extent any relationship appears to exist based on Plaintiff's Complaint, it is clear that the scope of any relationship between GDCAD and Daniel Palmer is within his role as a minister and GDCAD's oversight is limited to church doctrine and ecclesiastical matters. At no point has Plaintiff pled any fact upon which to base the conclusion that labor trafficking students of the ASOM is an activity within the course and scope of Minister Palmer's role as a minister. Nor can it be said that any sexual misconduct by Minister Palmer against Plaintiff did or could further the GDCAD's business, specifically when considering Plaintiff alleges GDCAD's goals were to attract new members and additional financial contributions. Dkt. 20 at ¶¶ 214 – 216. Indeed, Plaintiff only alleges that GDCAD revoked Palmer's

ministerial credentials after it allegedly received report of Palmer's abuse. *Id.* at ¶¶
244, 246. Thus, as pled, Plaintiff has failed to allege any conduct by Daniel Palmer
which the GDCAD could be found vicariously liable for.

**D. Plaintiff's breach of fiduciary duty claim fails where Plaintiff does not adequately plead the existence of a fiduciary relationship between herself and GDCAD.**

To sustain a breach of fiduciary duty claim, "it requires proof of three elements:
(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage
proximately caused by the breach." *See Doe v. McCoy*, 2024 U.S. Dist. LEXIS
33901, \*21 (N.D. Ga. 2024) (citing *Bedsole v. Action Outdoor Advert. JV, LLC*, 325
Ga. App. 194 (Ga. Ct. App. 2013). Thus, "a plaintiff must establish the existence of
a fiduciary relationship." *Id*. Moreover, "the Court is bound by the facts pled," when
determining whether a complaint establishes the existence of a fiduciary
relationship. *Id* at \*22.

In the instant case, Plaintiff has alleged no facts substantiating the existence of a
fiduciary relationship between Plaintiff and GDCAD. Put another way, Plaintiff
neglected to plead any facts demonstrating that GDCAD was a fiduciary "so situated
as to exercise a controlling influence over the will, conduct, and interest of another."
*Id*. (quoting in part *King v. King*, 316 Ga. 354, 888 S.E.2d 166 (Ga. 2023)). The
extent of Plaintiff's tenuously drawn connection between GDCAD and Plaintiff is

the allegations of GDCAD's credentialing of Daniel Palmer and financial contributions to ADC programs. Beyond this, Plaintiff draws no clear nor direct connection between GDCAD and Plaintiff. Without establishing this fiduciary relationship, Plaintiff cannot properly plead a breach of fiduciary duty claim. *Id*.

## V.    CONCLUSION

Defendant Georgia District Council Assemblies of God, Inc. respectfully requests this Court grant its Motion to dismiss based on the arguments contained herein, and those supportive arguments and facts presented by other Defendants.

This 9th day of June, 2025.

Respectfully submitted,

BENDIN SUMRALL & LADNER, LLC

By:    /s/ David V. Hayes
      David V. Hayes
      Georgia Bar Number 240156
      Julianna M. Hightower
      Georgia Bar Number 195582
      *Counsel for Defendant Georgia District*
      *Council of Assemblies of God, Inc.*

One Midtown Plaza, Suite 800
1360 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:(404) 671-3100
Facsimile: (404) 671-3080
Email: dhayes@bsllaw.net

# CERTIFICATE OF COMPLIANCE

By the signature below, and as required by LR 7.1, N.D. Ga, counsel for Defendant certifies that the foregoing pleading has been prepared with a 1.5-inch top margin using Times New Roman font, size 14.

This 9th day of June, 2025.

Respectfully submitted,

BENDIN SUMRALL & LADNER, LLC

By:   /s/ David V. Hayes
     David V. Hayes
     Georgia Bar Number 240156
     Julianna M. Hightower
     Georgia Bar Number 195582
     *Counsel for Defendant Georgia District*
     *Council of Assemblies of God, Inc.*

One Midtown Plaza, Suite 800
1360 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:(404) 671-3100
Facsimile: (404) 671-3080
Email: dhayes@bsllaw.net

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this date, served the within and foregoing Motion to Dismiss to all parties by statutory electronic service through the Court's CM/ECF electronic filing and service system as follows:

**Charles A. Childers, Esq**
**M. Brandon Smith, Esq.**
CHILDERS, SCHLUETER & SMITH, LLC
1932 N. Druid Hills Road, Suite 100
Atlanta, Georgia 30319
bsmith@cssfirm.com
*Attorneys for Plaintiff*

**Keith Smith, Esq.**
**Kimberly A. Dougherty, Esq.**
**Laura Yaeger, Esq.**
JUSTICE LAW COLLABORATIVE
210 Washington Street
North Easton, MA 02356
*kim@justicelc.com*
*Pro Hac Vice Filed*

**Collin D. Hatcher, Esq.**
KING YAKLIN & WILKINS, LLP
192 Anderson Street
Suite 125
Marietta, GA 30060
*Attorney for Atlanta Dream Center Church Inc.*

**Pamela Newson Lee, Esq.**
SWIFT CURRIE MCGEE & HIERS
1420 Peachtree Street, NE
Suite 800
Atlanta, Georgia 30309
404-888-6162
*Attorney for Atlanta Dream Center Church Inc. d/b/a Atlanta School of Ministry*

**John Sikes Gibbs, III, Esq.**
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, GA 30308-2216
404-885-3093
Fax: 404-885-3900
Email: evan.gibbs@troutman.com
*Attorney for Atlanta Dream Center Church Inc. d/b/a Frontline Response International, Inc.*


**John C. Sullivan, Esq.**
SL Law PLLC
610 Uptown Blvd.
Suite 2000
Cedar Hill, TX 75104
469-523-1351
Fax: 469-613-0891
Email: john.sullivan@the-sl-lawfirm.com
*Pro Hac Vice Filed*

**Edward Bedard, Esq.**
**Miles Christian Skedsvold, Esq.**
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA 30318
678-701-9381
Fax: 404-856-3255
Email: ebedard@robbinsfirm.com
*Attorneys for Assemblies of God*


**Sean L. Hynes**
Downey & Cleveland, LLP
288 Washington Avenue
Marietta, GA 30060
770-422-3233
Email: hynes@downeycleveland.com
*Attorney for MC Foundation, Inc.*

**William Richard Story**
Story Law, LLC
305 Lawrence Street NE
Ste 3c
Marietta, GA 30060
678-222-2347
Email: will@storylawllc.com
*Attorney for MC Foundation, Inc.*


This 9th day of June, 2025.

Respectfully submitted,

BENDIN SUMRALL & LADNER, LLC

By:    /s/ David V. Hayes
       David V. Hayes
       Georgia Bar Number 240156
       *Counsel for Defendant Georgia District*
       *Council of Assemblies of God, Inc.*

One Midtown Plaza, Suite 800
1360 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:(404) 671-3100
Facsimile: (404) 671-3080
Email: dhayes@bsllaw.net